UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KELLY CHESLER and JOSEPH
ASCOLESE,
        *Plaintiffs*,

    v.

CITY OF JERSEY CITY et al.,

        *Defendants*.

No. 15-cv-01825 (MEF)(SDA)


OPINION AND ORDER

\*   \*   \*

For the purposes of this brief Opinion and Order, the Court assumes familiarity with the procedural history and allegations of this case.

\*   \*   \*

The Court will recuse under 28 U.S.C. § 455.[1]

The Plaintiffs have requested that the undersigned recuse, see Mar. 30, 2026 Letter (ECF 265), and there is sufficient reason to conclude that there is an "appearance" of "[]partiality" issue here.  See Liteky v. United States, 510 U.S. 540, 548 (1994) (cleaned up).

At an earlier point in his career, the undersigned worked with Director of Public Safety Shea, see Transcript of Telephone Conference, Chesler v. City of Jersey City, No. 2:15-cv-01825-MEF-SDA (D.N.J. Mar. 24, 2026) (discussing this at length), and based on those interactions formed at least something of an

---

[1]  During the afternoon of March 20, the undersigned learned that the Director of the Jersey City Department of Public Safety, James Shea, was named as a Defendant in this case.  Later in the afternoon, the Court entered a text order to alert the parties of the relevant issue and to schedule a telephonic conference. See Mar. 20, 2026 Text Order (ECF 262).  A few hours ago, the last of the parties' filings as to whether the undersigned should recuse came in.  See Mar. 31, 2026 Letter (ECF 267).

impression of the manner in which he supervised personnel for the NYPD.

This case tees up closely similar issues --- as to how Director Shea has more recently supervised law-enforcement personnel for Jersey City.  See Second Amended Complaint and Demand for Trial by Jury ("Complaint") (ECF 113) ¶¶ 43-45, 55, 63, 95, 102-03, 106-07, 122, 135.

The confluence of (i) the undersigned's personal experience and (ii) this case's allegations --- that could lead a reasonable observer to doubt the Court's ability to impartially adjudicate this case.

\*     \*     \*

Against this conclusion, the Defendants offer two main counterarguments.

First, the Defendants note that in a prior case where Director Shea was sued, the undersigned did not recuse.  See Mar. 31, 2026 Letter (ECF 267) at 2-3.

But that case was doubly different.

In that case, the parties, having received the relevant information, did not object to the undersigned continuing with the case.  See Pinkston v. City of Jersey City, 2023 WL 4669523, at *1 (D.N.J. July 19, 2023) ("Lawyers for each of the parties confirmed . . . that they did not believe there was any basis for the undersigned to recuse from the case."). Here, the Plaintiffs have objected.  See Mar. 30, 2026 Letter at 2.

In addition, and more importantly, in that case, Director Shea was named in what was more or less an ex officio capacity.  The plaintiff in the other case alleged that Director Shea and other defendants "failed to adequately supervise, discipline, and train" members of the Jersey City police force.  Complaint and Demand for Trial by Jury ¶¶ 125, 132, 138, Pinkston v. City of Jersey City, No. 2:19-cv-13285-MEF-JSA (D.N.J. May 31, 2019) (ECF 1).  The plaintiff alleged that the Director, along with others, "failed to develop, implement, promulgate, and/or train . . . police officers."  Id. ¶¶ 127, 133, 139.

In the other case, in short, nothing meaningful was alleged about actions that Director Shea, himself, was personally said to have taken.  See Mar. 30, 2026 Letter at 2 (explaining that, in that case, "Mr. Shea [was] named as a defendant . . .

2

primarily, if not exclusively, based upon his position as Jersey City's Director of Public Safety").

By contrast, there are "specific allegations [in this case] of personal wrongdoing and misconduct" on the part of Director Shea himself. Id. The Plaintiffs here, for example, allege that Director Shea "falsely accused [the] Plaintiffs of allegedly being part of a conspiracy to create overtime shifts for officers." Complaint ¶ 44. That he reported to the police chief that one of the Plaintiffs "had engaged in sexual activities with 'half the motorcycle squad.'" Id. ¶ 53. That he suspended that Plaintiff without pay in order to "cripple her financially." Id. ¶ 122. And that he ordered the other Plaintiff transferred. Id. ¶ 95.

These are not impersonal allegations --- the sort that are sometimes directed in Section 1983 cases at senior supervisors on an all-but entirely structural basis, solely because of where they sit on a municipality's org chart.

Rather, this case concerns alleged conduct that Director Shea is personally said to have undertaken. Resolving allegations of this sort is that much more likely to require a credibility determination, and to impact a defendant's professional reputation. And that means that any appearance of partiality issue looms that much larger.

\*   \*   \*

The Defendants also raise a second argument against recusal.

They cite Judge Debevoise's time-honored discussion of recusal standards. See Mar. 31, 2026 Letter at 2 (citing Leja v. Schmidt Mfg. Inc., 2010 WL 2571850 (D.N.J. June 22, 2010)).

It is true, as Judge Debevoise noted, that judges sometimes have wide circles of professional acquaintances, and that "permit[ting] such associations to become grounds for recusal" could lead to more recusal than is appropriate. See Leja, 2010 WL 2571850, at *2.

But in Leja, Judge Debevoise was mainly focused on recusal of judges based on their relationships with lawyers handling cases before them. See id. at *3. Such relationships can certainly be a basis for recusal. (Indeed, there are lawyers on the undersigned's recusal list.)

3

But parties generally have much more at stake in a case than a lawyer does.  And in a case like one, in which there are allegations as to personal actions by one of the parties, that party's credibility may very well be put directly in play --- in ways that a lawyer's credibility less frequently is.

If the undersigned were as personally familiar with a given lawyer as the undersigned is with Director Shea, then Leja would arguably be more on point --- and different considerations might be in play.  But Director Shea is a party here, and this case concerns allegations of direct and personal wrongdoing on his part --- in the precise area (law-enforcement supervision) in which the undersigned previously interacted with the Director. In this circumstance, recusal is appropriate.

                    *      *      *

IT IS on this 31st day of March, 2026, **SO ORDERED**.

_____

                    Michael E. Farbiarz, U.S.D.J.

4